UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

| | | |
|---|---|---|
| TROY OSWALD, DAVID RIOS, and MICHAEL MCDUFFIE | : : | HON. MADELINE COX ARLEO, U.S.D.J. |
| Plaintiffs, | : | Civil Action No. 22-02195 |
| v. | : | |
| DANIELLE IRELAND-IMHOF, in her official capacity as PASSAIC COUNTY CLERK, PASSAIC COUNTY DEMOCRATIC COMMITTEE, MATTHEW J. PLATKIN, in his official capacity as ACTING ATTORNEY GENERAL OF NEW JERSEY, and JOHN DOES I-X (fictitious names), jointly, severally, and in the alternative | : : : : : : : | |
| Defendants. | : | |

BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINTS

_____

Angela Cai
 *Deputy State Solicitor*
Dominic Giova
 *Deputy Attorney General*
  Of Counsel and On the Brief

Steven M. Gleeson
Eric A. Reid
Levi Klinger-Christiansen
 *Deputy Attorneys General*
  On the Brief

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL
OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625

*Attorneys for Defendant*

# TABLE OF CONTENTS

<u>Page</u>

**PRELIMINARY STATEMENT** ......................................................... 1

**COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY** ...... 3

**ARGUMENT** .................................................................................... 7

**I.   PLAINTIFFS' ELEVENTH-HOUR APPLICATION SHOULD BE DENIED BECAUSE IT CANNOT MEET THE REQUIREMENTS FOR EMERGENCY RELIEF.** ................................................................. 7

    A.   Plaintiffs' Decision To Delay Filing Suit Defeats Irreparable Harm. ......... 7

    B.   The *Purcell* Principle Requires Rejecting Plaintiffs' Application .............10

**II.  PLAINTIFFS CANNOT SUCCEED ON THE MERITS OF THEIR UNDERLYING CLAIMS.** .................................................................14

    A.   Plaintiffs' Facial Challenge Will Not Succeed On The Merits .................14

    B.   Plaintiffs' As-Applied Challenge Will Not Succeed On The Merits .........25

**CONCLUSION** ................................................................................28

# TABLE OF AUTHORITIES

Page

**Cases**

*Abdul-Akbar v. McKelvie,*
239 F.3d 307 (3d Cir. 2001) ............................................................17

*Acierno v. New Castle Cty.,*
40 F.3d 645 (3d Cir. 1994) ...........................................................6, 8

*Adams v. Freedom Forge Corp.,*
204 F.3d 475 (3d Cir. 2000) ............................................................ 5

*Akron v. Bell,*
660 F.2d 166 (6th Cir. 1981) ..........................................................16

*Am. Beverage Corp. v. Diageo N. Am., Inc.,*
936 F.Supp.2d 555 (W.D. Pa. 2013) ................................................ 8

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) .......................................................................18

*Benisek v. Lamone,*
138 S. Ct. 1942 (2018)....................................................................11

*Brakebill v. Jaeger,*
139 S. Ct. 10 (2018) ...................................................................1, 11

*Bullock v. Carter,*
405 U.S. 134 (1972) ..........................................................15, 17, 18

*Callaway v. Samson,*
193 F. Supp. 2d 783 (D.N.J. 2002) .....................................16, 26, 27

*Carrington v. Rash,*
380 U.S. 89 (1965) .........................................................................18

*Chimento v. Stark,*
353 F. Supp. 1211 (D.N.H.), *aff'd,* 414 U.S. 802 (1973)...................16

*Chimento v. Stark*,
  414 U.S. 802 (1973) ........................................................................21

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985) ........................................................... 8

*Clements v. Fashing*,
  457 U.S. 957 (1982) ........................................................................17

*Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health & Human Servs.*,
  13-1144, 2013 WL 1277419, (3d Cir. Feb. 8, 2013) ........................... 5

*Council of Alternative Pol. Parties v. Hooks*,
  179 F.3d 64 (3d Cir. 1999) ..............................................................26

*Crookston v. Johnson*,
  841 F.3d 396 (6th Cir. 2016) ...........................................................11

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020) ..................................................12

*Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*,
  No. 19-8828, 2019 WL 1519026 (D.N.J. 2019) ................................. 7

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) ........................................................................15

*Evans v. Cornman*,
  398 U.S. 419 (1970) ........................................................................18

*Frank v. Walker*,
  574 U.S. 929 (2014) ........................................................................10

*GoNannies, Inc. v. GoAuPair.com, Inc.*,
  464 F.Supp.2d 603 (N.D. Tex. 2006).................................................. 8

*Hope v. Warden York Cty. Prison*,
  972 F.3d 310 (3d Cir. 2020) ............................................................. 6

*Joseph v. Birmingham*,
    510 F. Supp. 1319 (E.D. Mich. 1981) ................................................................16

*Kos Pharms. Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ........................................................................ 6

*Lanin v. Borough of Tenafly*,
    515 F. App'x 114 (3d Cir. 2013) ...................................................... 7

*Lewis v. Guadagno*,
    445 Fed. Appx. 599 (3d Cir. 2011) ...................................................17, 18, 25

*Lewis v. Guadagno*,
    837 F. Supp. 2d 404 (D.N.J. 2011) ........................................................18, 21

*MacDonald v. City of Henderson*,
    818 F. Supp. 303 (D. Nev. 1993) ...................................................................16

*Maryland v. King*,
    567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ...........................................14

*Matthews v. Atlantic City*,
    417 A.2d 1011 (N.J. 1980) ...........................................................17, 18, 23, 24

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) ............................................25

*Messina v. Coll. of New Jersey*,
    No. 21-cv-17576, 2021 WL 4786114 (D.N.J. Oct. 14, 2021)............................. 8

*N.J. Hosp. Ass'n v. Waldman*,
    73 F.3d 509 (3d Cir. 1995) .............................................................................. 6

*North Carolina v. Covington*,
    137 S. Ct. 1624 (2017)...................................................................................11

*Pharmacia Corp. v. Alcon Labs.*,
    201 F.Supp.2d 335 (D.N.J. 2002) ...................................................................... 8

iv

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006) ...................................................................................passim

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
  140 S. Ct. 1205 (2020)...........................................................................1, 10

*Republican Party of Pa. v. Cortés,*
  218 F.Supp.3d 396 (E.D. Pa. 2016) ..................................................12

*Reynolds v. Sims,*
  377 U.S. 533 (1964) ...........................................................................11

*Robertson v. Bartels,*
  150 F. Supp. 2d 691 (D.N.J. 2001) ("*Robertson I*") ..............................16, 17, 22

*Robertson v. Bartels,*
  890 F. Supp. 519 (D.N.J. 2012) ("*Robertson II*")...................................17, 21, 22

*Rutgers University Student Assembly v. Middlesex County Board of Elections,*
  141 A.3d 335 (N.J. Sup. Ct. App. Div. 2016) ...................................18

*State v. Anderson,*
  1 N.J.L. 318 (N.J. 1795) .........................................................9, 13, 22

*Stothers v. Martini,*
  6 N.J. 560 (1951)...................................................................... 9

*Sununu v. Stark,*
  383 F. Supp. 1287 (D.N.H. 1974)..................................................16

*Sununu v. Stark,*
  420 U.S. 958 (1975) .............................................................15, 21

*Trinity Indus., Inc. v. Chi. Bridge & Iron Co.,*
  735 F.3d 131 (3d Cir. 2013) .......................................................... 6

*Truck Ctr., Inc. v. Gen'l Motors Corp.,*
  847 F.2d 100 (3d Cir. 1998) .......................................................... 5

*United States v. Mitchell*,
  652 F.3d 387 (3d Cir. 2011) ............................................................................15

*United States v. Salerno*,
  481 U.S. 739 (1987) ..........................................................................................15

*Veasey v. Perry*,
  135 S. Ct. 9 (2014) ............................................................................................10

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ..........................................................................................15

*Williams v. Rhodes*,
  393 U.S. 23 (1968) ............................................................................................18

## Statutes

52 U.S.C. § 20302..................................................................................................12

52 U.S.C. § 20302(a)(8)(A) ...................................................................................10

N.J. Stat. Ann. § 19:23-24, as amended by P.L. 2022, c. 7 ...................................12

N.J. Stat. Ann. § 19:63-5 ........................................................................................12

N.J. Stat. Ann. § 19:63-9 ........................................................................................12

N.J. Stat. Ann. § 19:63-9(a) ...................................................................................10

N.J. Stat. Ann. § 40:70-3 ........................................................................................23

N.J. Stat. Ann. § 40:72-1 ........................................................................................23

N.J. Stat. Ann. § 40A:9-117.6 ................................................................................20

N.J. Stat. Ann. § 40A:9-94 (eff. July 1, 1971) ......................................................13

N.J.S.A. 40:41-1 ....................................................................................................... 9

P.L. 1876, p. 33 ...................................................................................................... 9

**Other Authorities**

David Wildstein, *Passaic GOP Candidate Doesn't Meet Residency Requirement, Democrats Say*, NEWJERSEYGLOBE.COM (Apr. 5, 2022, 6:34 PM) (https://newjerseyglobe.com/local/passaic-gop-candidate-doesnt-meet-residency-requirement-democrats-say/) (last visited Apr. 18, 2022). .............................4, 9

Gabriella Dragone, *Former Paterson Police Chief Try Oswald to Run for Passaic County Sheriff, PBA President Alex Cruz for Commissioner*, TAPINTOPATERSON (Jan. 23, 2022, 2:46 PM), https://www.tapinto.net/towns/paterson/sections/elections/articles/former-paterson-police-chief-troy-oswald-to-run-for-passaic-county-sheriff-pba-president-alex-cruz-for-commissioner (last visited Apr. 18, 2022) .................... 3

Joe Malinconico, *Troy Oswald, former Paterson police chief, will make a bid for Passaic County sheriff*, NORTHJERSEY.COM (Dec. 15, 2021), https://www.northjersey.com/story/news/paterson-press/2021/12/15/former-paterson-nj-police-chief-troy-oswald-runs-passaic-sheriff/8910662002/ (last visited on  Apr. 18, 2022) ................................................................................... 3

## **PRELIMINARY STATEMENT**

This Court should deny Plaintiffs' eleventh-hour request to enjoin the county clerk from preparing, printing, and sending mail-in ballots for upcoming June 7, 2022 Primary Election. The statute that Plaintiffs challenge, N.J. Stat. Ann. § 40A:9-94 (the "Residency Statute"), which requires that candidates for county sheriff reside in that county for three years prior to holding that office, was enacted in its current form by the Legislature in 1971 and has existed in predecessor statutes since 1788. But Plaintiffs chose to wait until a mere five business days before the deadline to send mail-in ballots to overseas voters pursuant to both federal and state laws to file this constitutional challenge and to move for emergency relief. This self-created exigency cannot be the basis of irreparable harm. And as the Supreme Court has instructed time and again, federal courts generally should "not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm*., 140 S. Ct. 1205, 1207 (2020) (quoting *Purcell v. Gonzalez*, 549 U.S. 1 (2006)); *see also Brakebill v. Jaeger*, 139 S. Ct. 10 (2018) (Ginsburg, J., dissenting) (noting "last-minute '[c]ourt orders affecting elections'" are heavily disfavored (quoting *Purcell*, 549 U.S. at 4-5)).

This case illustrates why delay in seeking relief from federal courts forecloses any emergency remedy. Granting Plaintiffs' request would pose significant risk to the public's right to vote, since the delay Plaintiffs seek strains the ability of the

1

county clerk to prepare, print, and distribute ballots before state and federal statutory deadlines. It would also undermine the public's confidence and trust in the fairness of the rules governing elections themselves: Plaintiff Oswald seeks to be included on the ballot despite admitting that he has not complied with the Residency Statute, but other would-be candidates will have had no such opportunity because the nominating and petition-filing deadlines have now passed.

Plaintiffs' request for an injunction also fails because Plaintiffs cannot establish a substantial likelihood of success on the merits of their underlying claim. Contrary to Plaintiffs' assertions, the Supreme Court has confirmed there is no fundamental right to run for office, and the Residency Statute imposes no suspect classifications. Thus, strict scrutiny does not apply. Instead, as the United States Supreme Court, the New Jersey Supreme Court, and this Court has already confirmed, residency requirements for statewide office are constitutionally permissible. By the same logic, similar requirements for countywide office are also permissible. And because the office of county sheriff—a supervisory, elected law-enforcement role—is an important and sensitive position of public trust, the three-year residency requirement is justified by specific compelling state interests.

Accordingly, the application for temporary injunctive relief should be denied.

2

## COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY

In December 2021, Plaintiff Troy Oswald submitted a letter to Passaic County Republican Party Chairman Peter Murphy, expressing his interest in running as the Republican candidate for the Office of Passaic County Sheriff.[1]  On January 15, 2022, Oswald was endorsed by the Passaic County Republican Committee.[2]

Oswald filed his nomination petition with Defendant Passaic County Clerk before the April 4, 2022 deadline set by N.J. Stat. Ann. § 19:23-14.  *See* Compl., ECF 2-2, at p.5, ¶28.  Subsequently, on April 5, 2022, the Passaic County Democratic Committee ("PCDC") became aware that Oswald did not satisfy the residency requirement of N.J. Stat. Ann. § 40A:9-94 because he was not a resident of the county for at least 3 years before the June 7, 2022 Primary Election.  *See id.* at pp. 31-49; ¶29.  PCDC filed a formal objection to Oswald petition with the Clerk, attaching a number of records, including Oswald's voter registration record, demonstrating he was not a registered voter in Passaic County until January 3, 2022.

---

[1] *See* Joe Malinconico, *Troy Oswald, former Paterson police chief, will make a bid for Passaic County sheriff*, NORTHJERSEY.COM (Dec. 15, 2021), https://www.northjersey.com/story/news/paterson-press/2021/12/15/former-paterson-nj-police-chief-troy-oswald-runs-passaic-sheriff/8910662002/ (last visited Apr. 18, 2022).

[2] *See* Gabriella Dragone, *Former Paterson Police Chief Try Oswald to Run for Passaic County Sheriff, PBA President Alex Cruz for Commissioner*, TAPINTOPATERSON (Jan. 23, 2022), https://www.tapinto.net/towns/paterson/sections/elections/articles/former-paterson-police-chief-troy-oswald-to-run-for-passaic-county-sheriff-pba-president-alex-cruz-for-commissioner (last visited Apr. 18, 2022).

*See id.* at pp. 13, 16-19.  Also attached were a number of deeds to various residences that Oswald has purchased and owned since 2001, including a deed for a property purchased in Sussex County in 2020, wherein he certified the property was used exclusively as his principal residence.  *See id.* at pp. 15, 37-49.[3]  On April 11, 2022, Oswald filed a response to the PCDC's objection and argued that the residency requirement is unconstitutional and that his petition for nomination should be accepted.  *See id.* at pp. 51-6; p. 31, ¶31.

On April 12, 2022, the Clerk issued a summary determination sustaining the PCDC's objection and declaring Oswald's petition invalid.  *See id.* at pp. 63-68; p. 31, ¶32.

On April 14, 2022, Oswald and the two other plaintiffs, David Rios and Michael McDuffie,[4] filed the instant Motion for Temporary Restraining Orders seeking to enjoin the printing, production, and distribution of any and all ballots to be used in the June 7, 2022 Primary Election involving the Republican Primary

---

[3] Of note, Oswald does not dispute the standing of his residency, but instead has said that he was told that he only had to be a resident for one year before being eligible to run.  David Wildstein, *Passaic GOP Candidate Doesn't Meet Residency Requirement, Democrats Say*, NEWJERSEYGLOBE.COM (Apr. 5, 2022, 6:34 PM) (https://newjerseyglobe.com/local/passaic-gop-candidate-doesnt-meet-residency-requirement-democrats-say/) (last visited Apr. 18, 2022).

[4] Rios and McDuffie are not individuals seeking to run for the office of County Sheriff, but rather are voters in Passaic County who allege to have been deprived of their right to vote for the candidate of their choosing for the position of Passaic County Sheriff.  Compl., ECF 2-2, at pp. 1-2, ¶¶ 2, 3; p. 4, ¶27.

Election for the Office of Passaic County Sheriff, and to declare the three-year residency requirement set forth in N.J. Stat. Ann. § 40A:9-94 as unconstitutional. While the three-year residency requirement is enforced by, in this case, the Passaic County Clerk, Plaintiffs noticed the Attorney General because their suit calls into question the constitutionality of the statute itself. For this reason, this office submits the following brief in opposition to Plaintiffs' request.

## STANDARD FOR PRELIMINARY INJUNCTION

Courts have cautioned that the grant of injunctive relief "is an extraordinary remedy which should be granted only in limited circumstances." *Truck Ctr., Inc. v. Gen'l Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1998); *see also, e.g.*, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) (noting the "dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat"). "Such stays are rarely granted" in the Third Circuit because "the bar is set particularly high." *Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health & Human Servs.*, 13-1144, 2013 WL 1277419, *1 (3d Cir. Feb. 8, 2013). Such relief is "never awarded as of right." *Id.* at *3 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)).

To grant injunctive relief, the moving party bears the burden of showing:

(1) A likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

5

*Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"[An] injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that *all four factors* favor preliminary relief." *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995) (emphasis added); *see also Kos Pharms*, 369 F.3d at 708 (noting courts must "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief"). Moreover, because the relief that Plaintiffs seek here is a mandatory injunction that alters the status quo, a heightened standard applies: Plaintiffs must show not only a "reasonable likelihood of success," Pls.' Br., ECF 2-1, at 2, but rather must demonstrate "a *substantial likelihood* of success on the merits and that their 'right to relief [is] indisputably clear,'" *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)) (emphasis added); *see also Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").

**ARGUMENT**

I. **PLAINTIFFS' ELEVENTH-HOUR APPLICATION SHOULD BE DENIED BECAUSE IT CANNOT MEET THE REQUIREMENTS FOR EMERGENCY RELIEF.**

Although the challenged Residency Statute has existed for over half a century, Plaintiffs waited until only five business days before the deadline to send mail-in ballots to overseas voters pursuant to both federal and state law to file their application for emergency relief from this Court. This Court should not reward Plaintiffs for their self-inflicted emergency. Instead, this Court should deny the application under the well-established principle that federal courts should not disturb the rules of the road governing elections so close to the time of their administration. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006).

A. **Plaintiffs' Decision To Delay Filing Suit Defeats Irreparable Harm.**

At the outset, Plaintiffs' choice to delay their challenge to the Residency Statute belies their contention that they are suffering from irreparable harm. It is well-established that a plaintiff's delay in filing a motion for preliminary relief "undermines any arguments of immediate irreparable harm." *Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*, No. 19-8828, 2019 WL 1519026, *4 (D.N.J. 2019); *see also, e.g.*, *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 118 (3d Cir. 2013) ("[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in

7

seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985))); *Pharmacia Corp. v. Alcon Labs.*, 201 F. Supp. 2d 335, 382 (D.N.J. 2002) (noting that a delay can "knock[] the bottom out of any claim of immediate and irreparable harm," and that it is a "dispositive basis" for rejecting an injunction); *Am. Beverage Corp. v. Diageo N. Am., Inc.*, 936 F.Supp.2d 555, 610-12 (W.D. Pa. 2013) (collecting cases). It is no surprise that courts look skeptically on such motions, as delays show "there is no apparent urgency to the request for injunctive relief," *GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006), and increase the risk that the injunction would "fundamentally alter[] the status quo," *Acierno*, 40 F.3d at 647.

Here, "any purported harm Plaintiffs may face is a consequence of their own delay because they waited over four months to request injunctive relief." *Messina v. Coll. of New Jersey*, No. 21-cv-17576, 2021 WL 4786114, at *9 (D.N.J. Oct. 14, 2021) (denying injunctive relief in constitutional challenge to COVID rules established four months prior). While Plaintiffs try to blame the Passaic County Clerk for the sudden emergency, *see* Pls. Br. at 6-7, it is Plaintiffs who created the emergency. The Residency Statute was passed in 1971, and has remained unchanged for fifty-one years. N.J. Stat. Ann. § 40A:9-94. In fact, the same durational residency requirement for the position of county sheriff has existed in predecessor statutes

8

since the time of the Founding. *State v. Anderson*, 1 N.J.L. 318, 324 (N.J. 1795) (describing 1788 statute that provides: "That no person shall hereafter be eligible to the office of sheriff in any county of this state unless he shall be, and hath been, an inhabitant thereof, and possessing a freehold estate in his own right in fee simple, in the same county, for three years previous to his election."); P.L. 1876, p. 33 ("Providing that no person shall be sheriff of any county in this state unless he shall have been a citizen of this state and inhabitant of such county for at least three years next preceding his election.");[5] *Stothers v. Martini*, 6 N.J. 560, 566 (1951) (noting that the predecessor statute, N.J.S.A. 40:41-1 provided: "No person shall be sheriff of any county unless he shall have been a citizen of this state and an inhabitant of the county for at least three years next preceding his election."). Oswald could have challenged the Residency Statute as soon as he decided to run for county sheriff. Given that Oswald publicly expressed his interest in December 2021, *see supra* at 3, he could have filed his federal court challenge four months ago, rather than the day before a holiday weekend that precedes the mail-in ballot- distribution deadline.

Oswald waited until Thursday, April 14 to file this challenge, the day before a court holiday (Good Friday) and a holiday weekend. The Passaic County Clerk is required to prepare and print both regular and mail-in ballots and send the mail-in

---

[5] Revision of the Statutes of New Jersey (1877), *available at* https://babel.hathitrust.org/cgi/pt?id=nyp.33433008591574&view=1up&seq=1154

ballots to voters by Saturday April 23. N.J. Stat. Ann. § 19:63-9(a). These statutory requirements, in turn, are required to meet federal deadlines. 52 U.S.C. § 20302(a)(8)(A). Had Oswald filed this challenge months (or years) earlier, there would be no such exigency.

To the extent Oswald has suggested he was misinformed that he only needed to be a resident of the county for one year to run for the Office of County Sheriff, *see supra* at 4, n.3, that is no reason to grant him emergency relief. Ignorance of the law does not make the nature of the emergency any less self-inflicted. Oswald's failure to apprise himself of the relevant state statute governing his candidacy does not excuse his delay in filing suit, or lessen the ramification of his late filing should his request be granted. *See infra* at 10-13.

## B. The *Purcell* Principle Requires Rejecting Plaintiffs' Application

On the other side of the ledger, granting an injunction would harm the public's interest.[6] As the Supreme Court has repeatedly instructed, injunctions on the eve of an election are heavily disfavored. *See Purcell*, 549 U.S. at 4-5. "[F]ederal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1207 (citing *Purcell*, 549 U.S. 1; *Frank v. Walker*, 574 U.S. 929 (2014); *Veasey v. Perry*, 135 S. Ct. 9 (2014); *Brakebill*, 139 S. Ct. 10 (2018)

---

[6] Because the nonmoving party in this case includes the State, the third and fourth injunctive relief factors are one and the same.

10

(Ginsburg, J., dissenting); *Benisek v. Lamone*, 138 S. Ct. 1942, 1944-45 (2018) (per curiam); *see also Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("[C]all it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.").

There are good reasons for this well-established rule. "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5; *see also North Carolina v. Covington*, 137 S. Ct. 1624, 1626 (2017) (noting that, in elections cases, a court must assess the "extent of the likely disruption" to the upcoming election, and "the need to act with proper judicial restraint when intruding on state sovereignty," before granting relief); *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (explaining that the federal "court[s] can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree").

The ramifications of granting an injunction in the immediate matter are not merely matters of principle. Indeed, an injunction at this juncture could have a profound disruptive effect on the conduct of the upcoming June 2022 primary election and possibly result in violations of federal election law. As Plaintiffs

acknowledge, there are "very specific and fast approaching deadlines with respect to ballot printing[.]"  Compl., ECF 2-2, at p. 14.  Moreover, Plaintiffs inexplicably chose to wait until certain deadlines have already passed to file their federal constitutional challenge against the longstanding statute.  Indeed, the deadline for the Clerk to conduct the ballot draw for the upcoming primary election, which determines where a candidate is positioned on the ballot, was April 14, 2022, the very day Plaintiffs filed their Complaint and Motion.  N.J. Stat. Ann. § 19:23-24, *as amended by* P.L. 2022, c. 7.  From there, the county clerk must design, prepare, and send the primary election ballot off for printing so that mail-in ballots can be sent out by April 23, 2022.  N.J. Stat. Ann. § 19:63-5; N.J. Stat. Ann. § 19:63-9.  This deadline is critically important, as it corresponds with federally-imposed election law deadlines.  52 U.S.C. § 20302.  Should Plaintiffs' TRO be granted, there is a significant risk that the Clerk cannot proceed with printing and disseminating the ballots in time to correspond with both state and federal statutory deadlines.

Such disruption, and the fallout resulting from said disruption, is "significant." *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 375 (D.N.J. 2020); *see Republican Party of Pa. v. Cortés*, 218 F.Supp.3d 396, 404-05 (E.D. Pa. 2016) (finding that last minute intervention in an election "risks practical concerns including disruption, confusion or other unforeseen deleterious effects"). Plaintiffs' delay in filing this matter is only exacerbated by the fact that the Residency Statute

has existed for decades (and the same substantive requirement has existed for centuries). *See Anderson*, 1 N.J.L. at 318, 325. That Plaintiffs waited until the eleventh hour only serves to further discredit their claim.

What's more, granting Plaintiffs' requested injunction at this hour would undermine the public's trust in the fairness of the electoral process, as changing the rules of candidacy so late in the process is inherently unfair to those who followed the law as it stands. In short, changing the rules of the road at such late a juncture would give the appearance of unequal administration of the laws. Because there may be individuals who would have run for office but abided by N.J. Stat. Ann. § 40A:9-94's durational residency requirement, granting a TRO to allow Oswald to bypass that statutory requirement is inherently unfair. And because petition deadlines are mandated by statute, they cannot be reopened for those candidates who would be impacted by such a ruling that wanted to seek nomination in the upcoming primary election. Nor is it feasible for such a candidate to be able to seek nomination in such a short period. In short, granting emergency relief would inure to the benefit of Plaintiffs, at the expense of others similarly situated.

As the *Purcell* principle instructs, Plaintiffs' extraordinary request for emergency relief must be denied. Plaintiffs' request to delay the printing and mailing of ballots for the rapidly approaching primary election poses a significant risk to the administrability of the election, including the risk of violating federal law

pertaining to the mailing of ballots for overseas citizens and military. Their request also undermines fundamental fairness for other would-be candidates. In short, an injunction would be detrimental to the public's interest.[7]

## II.   PLAINTIFFS CANNOT SUCCEED ON THE MERITS OF THEIR UNDERLYING CLAIMS.

Because Plaintiffs cannot carry their burden as to the equitable factors discussed above, no emergency injunction should issue. But even if the Court were to consider Plaintiffs' claims on the merits, an injunction should not issue because Plaintiffs cannot carry their burden of demonstrating substantial likelihood of success on the merits. Plaintiffs cannot meet their burden either as to the facial or as-applied challenge to N.J. Stat. Ann. § 40A:9-94.

### A. Plaintiffs' Facial Challenge Will Not Succeed on the Merits

Plaintiffs allege that the Residency Statute facially violates the Equal Protection Clause of the Fourteenth Amendment. Compl., ECF 2-2, at pp. 7-8, ¶¶49-53. But nothing in their submission demonstrates that they are likely to succeed.

Facial challenges are "the most difficult challenge to mount successfully"

---

[7] In addition to the more specific public interests discussed here, injunction of a duly enacted state statute harms the public's general interest in the democratic process. *See Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers) (noting that the State is harmed when a democratically enacted law is enjoined). The New Jersey Legislature, acting as representatives of the public, determined that the Residency Requirement was necessary for the Office of County Sheriff and codified it into law.

because the plaintiff "must establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc). A plaintiff must show "that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *Salerno*, 481 U.S. at 745). Here, Plaintiffs cannot meet this high bar.

Contrary to Plaintiffs' contention, the proper standard of analysis is rational basis or intermediate scrutiny. Although Plaintiffs cite *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972), for the general proposition that "durational residence laws must be measured by a strict equal protection test," they fail to recognize that *Dunn* concerned durational residence laws for *voters* to be able to exercise their right to vote, not durational residence laws for candidates seeking to run for office. And the relevant Supreme Court precedents demonstrate that *candidacy* requirements are subject to intermediate scrutiny. For example, in *Bullock v. Carter*, 405 U.S. 134 (1972), the Court held that sizable filing fee requirements—totaling in the thousands of dollars—are subject to intermediate, not strict, scrutiny. *Id.* at 144. And in *Sununu v. Stark*, 420 U.S. 958 (1975), the Supreme Court affirmed the judgment of the three-judge district court panel, which upheld New Hampshire's seven-year residency requirement for state senators. In the three-judge panel's view, "the right to vote and the right to seek public office are not synonymous," and the latter was

subject to a "compelling state interest" review, not strict scrutiny. *Sununu v. Stark*, 383 F. Supp. 1287, 1291 (D.N.H. 1974) (citing *Chimento v. Stark*, 353 F. Supp. 1211 (D.N.H.), *aff'd*, 414 U.S. 802 (1973)).

Since *Bullock*, *Sununo*, and *Chimento*, the weight of precedent favors applying intermediate scrutiny or rational basis review to durational residency requirements for state office. *See, e.g.*, *In re Contest of November 8, 2011 General Election of Office of New Jersey General Assembly*, 40 A.3d 684, 688-89 (N.J. 2012) ("*In re 2011 General Election*"); *Akron v. Bell*, 660 F.2d 166, 169 (6th Cir. 1981); *Joseph v. Birmingham*, 510 F. Supp. 1319, 1328 (E.D. Mich. 1981); *MacDonald v. City of Henderson*, 818 F. Supp. 303, 305-06 (D. Nev. 1993); *see also Callaway v. Samson*, 193 F. Supp. 2d 783 (D.N.J. 2002) (applying "a form of intermediate scrutiny" to an equal protection challenge raised against N.J. Stat. Ann. § 40A:9-1.13's one-year durational residency for local elective offices).

Indeed, in only one instance has this court applied strict scrutiny to a durational residency requirement imposed on candidates when it held that the New Jersey Constitution's durational residency requirement for General Assembly members violated the Equal Protection Clause. *Robertson v. Bartels*, 150 F. Supp. 2d 691 (D.N.J. 2001) ("*Robertson I*"). However, when asked to revisit that decision in the wake of the New Jersey Supreme Court's decision in *In re 2011 General Election*, this Court declined "to decide whether to apply intermediate or strict

16

scrutiny." *Robertson v. Bartels*, 890 F. Supp. 2d 519, 530 (D.N.J. 2012) ("*Robertson II*"). Instead, the Court narrowed its original decision, holding that the New Jersey Constitution's durational residency requirement imposed on General Assembly members could not survive intermediate or strict scrutiny "*as applied during reapportionment years*." *Id.* at 530-31 (emphasis added). Accordingly, the weight of persuasive authority favors applying intermediate scrutiny.

Fourteenth Amendment principles also arrive at the same result. After all, the classifications that Plaintiffs challenge—between candidates running for county sheriff as opposed to county clerk and surrogate—are not suspect classes subject to heightened scrutiny. Accordingly, under the Equal Protection Clause, such classifications are valid "so long it bears a rational relationship to some legitimate end." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). Moreover, the "Supreme Court has rejected the argument that an individual has a fundamental right to candidacy." *Lewis v. Guadagno*, 445 F. App'x 599, 603 (3d Cir. 2011) (citing *Bullock*, 405 U.S. at 142; *Clements v. Fashing*, 457 U.S. 957, 963 (1982)); *see also Matthews v. Atlantic City*, 417 A.2d 1011, 1019 (N.J. 1980). As for Plaintiff Oswald's alleged right to travel within the state, even the *Robertson I* court recognized "the fundamental right which is threatened by the one year residency requirement . . . is not the right to free speech or the right to travel." *Robertson I*, 150 F. Supp. 2d at 695–96. And as this Court noted in *Lewis*, "[b]ecause candidacy

for political office is not a fundamental right, Plaintiff is not being forced to choose between his right to travel and another constitutional entitlement or freedom," and thus rational basis review should apply to durational residency requirements. *Lewis v. Guadagno*, 837 F. Supp. 2d 404, 412 (D.N.J.), *aff'd*, 445 F. App'x 599 (3d Cir. 2011).[8]

The Residency Statute survives intermediate scrutiny because it is "reasonably and suitably tailored to further legitimate governmental objectives." *In re 2011 General Election*, 40 A.3d at 699 (quoting *Matthews*, 417 A.2d at 1020). States enjoy a "breadth of power . . . in determining voter qualifications and the manner of elections." *Bullock*, 405 U.S. at 141 (citing *Williams v. Rhodes*, 393 U.S. 23 (1968); *Evans v. Cornman*, 398 U.S. 419 (1970); *Carrington v. Rash*, 380 U.S. 89 (1965)). While that power must of course be "exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment," *id.*, "states are entitled to broad leeway in regulating elections to ensure they are carried out in a fair and efficient manner," *Rutgers University Student Assembly v. Middlesex County Board of Elections*, 141 A.3d 335, 340 (N.J. Sup. Ct. App. Div. 2016) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

---

[8] Under these same principles, Plaintiffs Rio and McDuffie cannot transform the proper analysis to strict scrutiny by alleging an inability to vote for their desired candidate. The Plaintiffs are entitled to cast their vote at the Primary Election just like any other voter. Should they truly desire to vote for Oswald, they are free to write in his name.

The Residency Statute for county sheriff, like the durational residency requirement for officials running for statewide positions, furthers numerous legitimate governmental objectives, such as ensuring the candidate's familiarity with the constituency and its unique issues, ensuring the electorate's familiarity with the candidate, and preventing political carpetbagging. *In re 2011 General Election*, 40 A.3d at 699-700 (recognizing the state's interest in insuring that candidates are familiar with their respective jurisdictions and that they have a genuine interest in the community which they would be elected to represent).

Plaintiffs appear to acknowledge that some durational residency requirements are permissible. For example, they acknowledge that four-year residency requirements to be a State Senator serve permissible state interests. *See* Br. at 9 (citing *Lewis*, 445 F. App'x 599). And Plaintiffs appear to have no problem with the one-year residency requirement for other countywide offices. *See* Br. at 13. But these admissions that *some* residency requirements are constitutionally permissible underscore why the Legislature was free to conclude that a longer durational residency requirement for county *sheriff* is justified.

Consistent with the Legislature's decision, county sheriffs serves unique and sensitive functions not applicable to other county positions, including county clerks and surrogates: law enforcement and protecting public safety. *See* N.J. Stat. Ann. § 40A:9-117.6 (listing duties of sheriff's officers as including: "attending the courts

heretofore performed by court attendants, or in serving court processes, or in the investigation and apprehension of violators of the law, or in criminal identification, or in ballistics, or in any related work which the sheriff shall, from time to time prescribe and as shall be determined to be appropriate by the Civil Service Commission"). While the State has a compelling interest in seeing that *all* of its elected officials have particularly firm roots in the county he or she serves, such an interest is heightened for the law enforcement supervisory role of county sheriff. And because voters are tasked with selecting a law enforcement supervisor to protect their safety and to serve the ends of justice, the State has a significant interest in ensuring that the candidate is someone whose personal commitment to the electorate is deep and who share a common lived experience as those who will be subject to law enforcement scrutiny.[9] When considering the immediate and broad impact a sheriff has on his or her constituency, the Residency Statute's three-year residency mandate is "reasonably and suitably tailored to further" the State's interest in ensuring a deep familiarity between such candidates and the residents they so profoundly impact.

Relevant precedents already confirm that such residency requirements pass constitutional scrutiny. *See, e.g.*, *Lewis*, 837 F. Supp. 2d at 412 (upholding four-

---

[9] That is also why merely working in a public office in a specific municipality within the county is not sufficient.

year residency requirement for New Jersey state senators); *Sununu*, 420 U.S. 958 (affirming decision upholding seven-year residency requirement for New Hampshire state senators); *Chimento v. Stark*, 414 U.S. 802 (1973) (same for New Hampshire governor). And the fact that these precedents concerned statewide office does not make them any less applicable. After all, if it is constitutionally permissible to require that an elected official serving the entire state to have lived in the state for at least four years, it is equally permissible to require that an elected official serving the entire county to have lived within that county for three years.

None of the cases Plaintiffs cite are to the contrary. The *Robertson* cases involved a set of considerations absent here: the changing of geographic boundaries that govern the residency requirement at issue. In *Robertson II*, the Court held that the one-year residency requirement imposed by the New Jersey Constitution on General Assembly members did not achieve legitimate government interests "during reapportionment years" precisely because a given candidate's conformance to the residency requirement can be altered through no decision of the candidate's own, but rather because the lines of the district are redrawn. *Robertson II*, 890 F. Supp. 2d at 531. This Court reasoned that because "reapportionment occurs approximately seven months before the election . . . during reapportionment years, the one-year residency requirement cannot possibly serve to ensure either the prospective constituency's familiarity with a candidate, the candidate's familiarity with the

21

constituency, or prevent carpetbagging, when the constituency has only existed for seven months." *Id.* The clear distinction here is that counties are not subjected to reapportionment; unlike legislative districts, county lines are not reevaluated every ten years. Thus, given the static nature of county lines, the State's interest in ensuring familiarity between the candidate and the constituency is not diminished in the same way this Court held it was in reapportionment years for members of the General Assembly. Similarly, given that county lines do not regularly shift, the *Robertson II* Court's additional concern that the durational residency requirement could "perversely result in carpetbagging" in "reapportionment years," is also inapplicable here. *See id.*

The *Robertson* court's holding is also inapplicable here for another reason: the decision explicitly rested on the fact that "the one-year durational residency requirement for a legislative district, although it appears in the New Jersey constitution, 'is of much more recent vintage'" than the durational residency requirement upheld by the Supreme Court in *Sununu*, 420 U.S. 958. *Robertson II*, 890 F. Supp. 2d at 523 (quoting *Robertson I*, 150 F.Supp.2d at 698-699). But just as the New Hampshire requirements dated back to 1784, the three-year durational residency requirement for county sheriff has existed in this state since 1788. *State v. Anderson*, 1 N.J.L. at 318, 325. Thus, what the *Robertson* court found as distinguishable from *Sununu* does not exist here.

Plaintiffs' attempted analogy to *Matthews v. Atlantic City*, is similarly unfounded.  In *Matthews*, the New Jersey Supreme Court considered an equal protection challenge to the two-year durational residency requirement of the "Commission Form of Government Law," also known as the "Walsh Act," N.J. Stat. Ann. § 40:70-1.  417 A.2d at 1012.  That law allows for municipalities to adopt "a commission form of government," and be governed by the Walsh Act's provisions. N.J. Stat. Ann. § 40:70-3.  The provision at issue provided that in covered municipalities, i.e., those that formally adopted the law, a member of the elected governing body, called the "board of commissioners," had to be "a citizen and resident of the municipality for at least two years immediately preceding his election."  N.J. Stat. Ann. § 40:72-1.

In *Matthews*, after determining that intermediate scrutiny was the applicable constitutional test, the New Jersey Supreme Court ultimately determined that it "need not resolve whether a two-year residency requirement passes constitutional muster," because the alleged governmental justifications for that provision were insufficient to support the uneven treatment of municipalities.  *Matthews*, 417 A.2d at 1021.  The court observed "that the statute applie[d] to only 40 out of 567 municipalities in the State."  *Id.*  The court further reasoned:

> Because the right to vote is fundamental, the State has the affirmative burden of justifying why voters in some municipalities may vote only for candidates satisfying a two-year residency requirement *while voters in other*

23

> *municipalities are not so restricted.* It has failed to provide
> any sound justification why municipalities under the
> Walsh Act and other forms of local government should be
> treated differently.

[*Id.* at 173.]

Unlike the Walsh Act's residency requirement, which applies only to some municipalities, the Residency Statute applies with equal force to every sheriff in every county.  There is no such scenario where voters in one county are restricted to voting for sheriff candidates that satisfy the three-year residency requirement while voters in another county are not.  The requirement is not based on the form of government by which a municipality elects to utilize, but instead applies uniformly to all twenty-one counties in New Jersey.  Moreover, in *Matthews*, the court struck down the Walsh Act's provision because the *voters* were being treated unequally across jurisdictions—implicating their fundamental rights to vote.  Here, voters in every county are treated the same.  The fact that different elected positions uniformly face different eligibility requirements is not constitutionally suspect. And Plaintiffs' attempt to analogize to *Matthews* on the basis of other county offices established by the New Jersey Constitution, namely the clerk and surrogate, which are not subject to any durational residency requirements, is inapposite.  *See* Pls.' Br. at 13.  The *Matthews* Court was concerned with the unequal application of durational residency requirements across *jurisdictions*, not across *elected positions*.  And as discussed *supra*, at 19, the position of county sheriff implicates unique and sensitive powers

24

and duties that are not implicated by other county positions.

Through the Residency Statute, New Jersey has appropriately exercised its broad authority to regulate elections in a constitutionally permissible manner. Accordingly, Plaintiffs cannot demonstrate a substantial likelihood of success on the merits, especially "in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) (citing *Purcell*, 549 U.S. 1).

B. Plaintiffs' As-Applied Challenge Will Not Succeed On The Merits

Plaintiffs further contend that even if the Residency Statute is not facially unconstitutional, it is unconstitutional as applied to Oswald in light of his personal history and connections with Passaic County. Importantly, Plaintiffs do not appear to allege that the Residency Statute is being applied unequally. *See, e.g.*, *Lewis*, 445 F. App'x at 602 (rejecting as-applied challenge to state residency requirement because plaintiff "cannot point to a similarly situated person who, having voted as a citizen of another state less than three years before a general election in New Jersey, was deemed eligible to run for statewide office"). Instead, they appear to argue that the statute should make an exception for Oswald by virtue of his own personal characteristics.

There is no basis in precedent for the proposition that a generally-applicable, facially-valid law supported by legitimate state interests must make exceptions for a particular individual subject to the law. In fact, the opposite is true: the state has a

compelling state interest in ensuring that election rules are applied evenhandedly and that individual candidates are not favored over others. *See Council of Alternative Pol. Parties v. Hooks*, 179 F.3d 64, 73 (3d Cir. 1999) (noting importance of not giving candidate "preference, bypass, or political advantage" (internal citations omitted)). Just as a Pennsylvania resident who served for a decade as legal counsel for a New Jersey law firm providing important counsel to the State cannot overcome residency requirements to run for the New Jersey Senate, Oswald's prior employment and influence cannot justify a special exemption under the law.

Plaintiffs' reliance on *Callaway* does not support their theory of an as-applied challenge. In *Callaway*, the court held New Jersey's one-year residency requirement under N.J. Stat. Ann. § 40A:9-1.13, which requires that a candidate for local office reside in the "local unit" for "at least one year prior to the date upon which the election for the office is to be held," was unconstitutional as-applied in that matter. *Callaway*, 193 F. Supp. 2d at 784. The plaintiff in that case lived in Atlantic City's Second Ward his entire life, but when a council seat for the Third Ward became available, he moved approximately thirteen blocks to that Ward to run for office. *Id.* When the plaintiff sought to place his name on the ballot, the City informed him he was ineligible to run because he had not "been a resident of that local unit [the Ward] for at least 1 year immediately prior to the date upon which the election" was to be held. *Id.*

In applying "a form of intermediate scrutiny," this Court held that N.J. Stat. Ann. § 40A:9-1.13's general rule of residing in a "local unit" could not be permissibly applied to ward-specific residency requirements for city council. *Id.* at 785-76. Importantly, however, the Court was not making a special exception for Callaway himself. Rather, the Court held that the level of granularity for a ward-specific residency requirement could not be justified by compelling state interests. *Id.* at 789 (explaining that "city councilors from neighboring wards within the same city" do not "have much opportunity to benefit themselves at the expense of their voters"). The court thus held that "although New Jersey may well have an interest in assuring that candidates will know their would-be constituency well, the residency requirement in question"—the ward-specific requirement—was "tied so loosely to that interest that it at times actually works against it." *Id.* at 788. That is a far cry from this case, where Plaintiff is seeking a one-ride only exemption to a general law based on his personal background in the guise of an "as-applied" challenge.[10]

---

[10] And even if the court were to compare Oswald to Callaway, that comparison falls short. While Oswald has some ties to Passaic County; those ties are distinguishable from the forty years of uninterrupted residency in the city that the plaintiff in *Callaway* was seeking to serve.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraints and for Preliminary Injunctive Relief should be denied.

Respectfully Submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL OF
NEW JERSEY

By:   <u>s/Dominic L. Giova</u>
Dominic L. Giova (208122016)
Deputy Attorney General
Dominic.Giova@law.njoag.gov