**\*FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TROY OSWALD, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DANIELLE IRELAND-IMHOF, et al.,<br><br>*Defendants*. | Civil Action No. 22-2195<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiffs Troy Oswald's ("Oswald"), David Rios' ("Rios"), and Michael McDuffie's ("McDuffie" and together with Oswald and Rios, "Plaintiffs") Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, ECF No. 2. Defendants Danielle Ireland-Imhof (the "Clerk"), Passaic County Democratic Committee ("PCDC"), and Matthew J. Platkin (the "Attorney General" and together with the Clerk and PCDC, "Defendants") oppose the Motion. ECF Nos. 6, 7, 9.[1] For the reasons explained below, the Motion is **DENIED**.

This matter arises from a summary decision by the Clerk of Passaic County, New Jersey, disqualifying Oswald from seeking election to the office of Passaic County Sheriff due to Oswald's failure to satisfy a statutory residency requirement. See generally Compl. Specifically, N.J.S.A. § 40A:9-94 provides that "No person shall be eligible to the office of sheriff of any county unless he shall have been a citizen of the United States and a resident of the county for at least 3 years

---

[1] Yohane Perdomo and Kaholin Pena ("Amici") also move for leave to appear as amicus curiae, to represent the interests of citizens and registered voters residing in Passaic County. ECF No. 8. After considering the four factors set forth in Granillo v. FCA US LLC, No. 16-153, 2018 WL 4676057, at \*10 (D.N.J. Sept. 28, 2018), the Court **GRANTS** Amici's Motion for Leave to Appear as Amicus Curiae. See also U.S. v. Alkaabi, 223 F. Supp. 2d 583, 592 (D.N.J. 2002) ("The extent, if any, to which an amicus curiae should be permitted to participate in a pending action is solely within the broad discretion of the district court." (citation omitted)).

next preceding his election." Plaintiffs concede that Oswald has not resided in Passaic County for the requisite three years but challenge the constitutionality of the durational residency requirement. Compl. ¶¶ 13, 58.

## I.  FACTUAL BACKGROUND[2]

Prior to April 5, 2022, Oswald filed a nominating petition with the Clerk seeking election as sheriff of Passaic County (the "Petition"). Id. ¶ 28. The PCDC filed an objection to the Petition on April 5, 2022, which argued that Oswald failed to satisfy N.J.S.A. § 40A:9-94 based on voter registration and property records showing that Oswald resided in Morris and Sussex County for most of the last three years. Id. ¶¶ 29-30 & Ex. A. On April 12, 2022, the Clerk issued a summary decision sustaining the PCDC's objection and declaring the Petition invalid. Id. ¶ 32 & Ex. C.

While Oswald acknowledges that he has continuously resided in Passaic County since only October 1, 2021, he states that he nonetheless has "deep ties" to the community. Id. ¶¶ 13, 25. Oswald was raised in the Passaic County municipality of Little Falls for twenty-one years and lived in the Passaic County municipalities of Paterson, West Milford, and Clifton for an unspecified portion of his adult life. Id. ¶¶ 11-12. Oswald also worked as a police officer in Paterson for twenty-eight years before his retirement, ultimately attaining the rank of Chief of Police. Id. ¶ 17. During his time with the Paterson Police Department, Oswald met with the public and attended community, outreach group, and City Council meetings. Id. ¶ 18. Oswald also taught as a college professor at the Passaic County Community College for ten years, participated in several organizations based in Passaic County, and is an active parishioner at churches in Paterson and Little Falls. Id. ¶¶ 19-24.

---

[2] These facts are drawn from the Verified Complaint, ECF No. 1 (the "Complaint").

## II. PROCEDURAL HISTORY

Plaintiffs initiated this action on April 14, 2022 by filing a two-count Verified Complaint alleging that the three-year residency requirement set forth in N.J.S.A. § 40A:9-94 is unconstitutional both on its face and as-applied to Oswald.[3] Id. ¶¶ 49-58. Oswald specifically asserts that the statute violates his constitutional rights to seek public office, to receive equality of treatment, and to travel. Id. ¶¶ 50-52, 55-57. Plaintiffs Rios and McDuffie (the "Voter Plaintiffs") and Oswald further allege that they wish to vote for Oswald as a candidate for sheriff, and that the Clerk's decision violated their right to vote for a candidate of their choosing. Id. ¶¶ 53, 58.

Concurrently with the Verified Complaint, Plaintiffs filed the instant Motion asking the Court to (1) temporarily restrain the Clerk from printing ballots for the upcoming June 2022 primary election for Passaic County; and (2) preliminarily enjoin the application of N.J.S.A. § 40A:9-94 and instruct the Clerk to list Oswald on the ballot. On April 18, 2022, the Court entered a Consent Order restraining the Clerk from printing ballots until 4:00 PM on April 21, 2022 and ordering Defendants to show cause, in writing, why the Court should not issue Plaintiffs' requested injunction. ECF No. 5. Defendants have submitted written oppositions, ECF Nos. 6, 7, 9, and the Court heard oral argument on April 21, 2022. This Opinion follows.

## III. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that is not routinely granted. Then v. INS, 37 F. Supp. 2d 346, 351 (D.N.J. 1998). A plaintiff seeking a preliminary injunction must establish (1) the likelihood of success on the merits; (2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his or her favor;

---

[3] Plaintiffs assert parallel claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, et seq.

and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); accord Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012). The movant bears the burden of establishing these elements. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citations omitted). The decision to grant or deny a preliminary injunction application lies within "the sound discretion of the district judge, who must balance all of the Injunction Factors in making a decision." FM 103.1, Inc. v. Universal Broad. of N.Y., Inc., 929 F. Supp. 187, 193 (D.N.J. 1996) (citing Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982)).

**IV.　DISCUSSION**

Defendants argue that the Court must deny the Motion because Plaintiffs have failed to demonstrate a likelihood of success on the merits. The Court agrees and consequently, it need not reach the issues of irreparable harm, balancing of harms, and public interest. See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989).

To show a likelihood of success on the merits, the moving party must produce sufficient evidence to satisfy the underlying cause of action. Conestoga Wood Specialties Corp. v. Sec'y of U.S. HHS, No. 13-1144, 2013 WL 1277419 (3d Cir. Feb. 7, 2013). Further, to determine whether success on the merits is likely, a court should consider the legal principles affecting the claim, as well as any potential defenses available to the opposing party. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 264 (3d Cir. 2000). "[M]ore than a mere possibility of relief is required" to make the required showing; the moving party must show "a reasonable probability of

4

eventual success." Reilly v. City of Harrisburg, 858 F.3d 173, 179 n.3 (3d Cir. 2017) (internal quotations omitted).

Before assessing the constitutionality of N.J.S.A. § 40A:9-94, the Court must identify the constitutional rights at issue and determine the level of scrutiny to be applied. From there, the Court assesses the merits of Plaintiffs' facial and as-applied challenges.

### A. Standard of Constitutional Review

Plaintiffs argue that N.J.S.A. § 40A:9-94 violates the Fourteenth Amendment's guarantee that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "Durational residency laws implicate equal protection concerns" because they "divide residents in two classes, old residents and new residents, and discriminate[] against the latter to the extent of totally denying them some benefit or right." Lewis v. Guadagno, 445 F. App'x 599, 602 (3d Cir. 2011) (citing Dunn v. Blumstein, 405 U.S. 330, 334-35 (1972) (quotations omitted)).

In general, "legislatures are presumed to have acted within their constitutional power" even if a law inherently results in "some inequality." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (citation omitted). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Id. (citation omitted). Here, Plaintiffs argue that heightened scrutiny is required because New Jersey's three-year residency requirement unconstitutionally burdens three of Plaintiffs' "fundamental rights": Oswald's right to run for public office, Oswald's right to intrastate travel, and all Plaintiffs' right to vote for the candidate of their choice. See Compl. ¶¶ 50, 52-53. The Court examines each in turn.

5

First, Oswald's asserted right to run for office merits little discussion because "the Supreme Court has rejected the argument that an individual has a fundamental right to candidacy." Lewis, 445 F. App'x at 603 (citing Clements v. Fashing, 457 U.S. 957, 963 (1982)).  Plaintiffs correctly argue that a State may not restrict access to public office based on "distinctions that violate federal constitutional guarantees"—i.e., inherently suspect classifications such as race.  See Turner v. Fouche, 396 U.S. 346, 362 (1970).  The residency statute here, however, applies neutrally to all those seeking election as sheriff.  To the extent Plaintiff argues that N.J.S.A. § 40A:9-94 is unconstitutional because the three-year residency requirement applies to the office of sheriff but not to other county-wide offices, no suspect classification is implicated, and rational basis review applies.[4]

Second, the Third Circuit has recognized a fundamental right to intrastate travel.  Lutz v. City of York, Pa., 899 F.2d 255, 267 (3d Cir. 1990).  A statute burdening that right must be subjected to "intermediate scrutiny" and upheld only "if it is narrowly tailored to meet significant [government] objectives."  Id. at 270.  Courts have diverged on whether durational residency restrictions for public office burden the right to travel to a degree that requires heightened scrutiny. Compare Callaway v. Samson, 193 F. Supp. 2d 783, 789 (D.N.J. 2002) (applying intermediate scrutiny to determine whether residency statute "impermissibly burden[ed]" a candidate's right to intrastate travel) and In re Contest of Nov. 8, 2011 Gen. Election of Off. of N.J. Gen. Assembly, 210 N.J. 29, 55 (2012) (same), with Robertson v. Bartels, 150 F. Supp. 2d 691, 696 (D.N.J. 2001) ("Robertson I") ("The fundamental right which is threatened by [a] one year residency requirement

---

[4] The positions of sheriff, county clerk, and surrogate were established by the New Jersey Constitution, see Art. VII, § II, ¶ 2, but the three-year county residency requirement is provided by statute at N.J.S.A. § 40A:9-94.  While the present version of the statute was passed by the Legislature in 1971, predecessor versions of the statute date back to 1788.  See id.; State v. Anderson, 1 N.J.L. 366 (1975).

. . . [is not] the right to travel."); see also Lewis v. Guadagno, 445 F. App'x 599, 603 (3d Cir. 2011) (holding that a statewide residency requirement does not unconstitutionally burden the right to interstate travel absent a showing that the requirement forces the candidate "to choose between travel and another fundamental right"). Applying the principles of Lutz, the Court is satisfied that intrastate durational residency requirements that place some burden on the right to travel are subject to intermediate scrutiny.

Third, neither the Supreme Court nor the Third Circuit has directly addressed the degree to which intrastate durational residency requirements burden the right to vote or the appropriate standard of review to assess such restrictions. The Court therefore looks to the broader principles of voting rights cases to determine the proper level of scrutiny. While durational residency requirements "have a significant indirect effect on the voter's freedom of choice," In re Contest, 210 N.J. 29 at 49 (citing Matthews v. City of Atl. City, 84 N.J. 153 at 169 (1980)), "citizens do not have an unfettered right to select any person of their choosing for public office." Lewis v. Guadagno, 837 F. Supp. 2d 404, 413 (D.N.J.), aff'd, 445 F. App'x 599 (3d Cir. 2011). Recognizing the inherent power of States to regulate their own elections, and the fact that any election law will "invariably impose some burden upon individual voters," the Supreme Court has cautioned that "the mere fact that a State's system creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny." Burdick v. Takushi, 504 U.S. 428, 433-34 (1992) (citations and quotation marks omitted). Instead, the Court must "examine in a realistic light the extent and nature of [a restriction's] impact on voters" before determining the standard of review. Bullock v. Carter, 405 U.S. 134, 143 (1972). Strict scrutiny— under which a statute must be "narrowly drawn to advance a state interest of compelling

7

importance"—applies only when a law severely impedes the right to vote, which is not the case here. Burdick, 504 U.S. at 434.

Courts examining election residency requirements have consistently declined to apply strict scrutiny. For example, in Lewis, the district court applied a "rational basis" standard of review to a statewide residency requirement after concluding that "a durational residency requirement for aspirants of state political office has nothing more than a minor, incidental impact on the rights of citizens to vote." Lewis, 837 F. Supp. 2d at 413. Though courts have viewed intrastate residency requirements as more burdensome on a voter's right to choose than statewide restrictions, they have typically applied only intermediate scrutiny to assess their constitutionality. See, e.g., Robertson v. Bartels, 890 F. Supp. 2d 519, 530 (D.N.J. 2012) ("Robertson II");[5] In re Contest, 210 N.J. at 55; Matthews, 84 N.J. at 169-70. Courts in other jurisdictions are largely in accord. See, e.g., Pa. Democratic Party v. Boockvar, 238 A.3d 345, 385 (Pa. 2020) (rational basis review); Barrow v. City of Detroit Election Comm'n, 836 N.W.2d 498, 423 (Mich. App. 2013) (intermediate scrutiny); Cox v. Barber, 568 S.E.2d 478, 481 (Ga. 2002) (intermediate scrutiny).

---

[5] Plaintiffs rely on Robertson I as evidence that this Court should apply strict scrutiny here. This argument is unavailing. Although the court did apply strict scrutiny in Robertson I, in Robertson II, the court examined New Jersey's requirement that those seeking election to the state legislature must reside in the district they wish to represent for one year prior to the election. 890 F. Supp. 2d 519. The court found that it must apply either strict or intermediate scrutiny to assess whether the requirement could be constitutionally applied during reapportionment years, where the geographical boundaries of the district could change and result in "candidates and incumbents becoming arbitrarily separated from their constituents." Id. at 530. To the extent Robertson II can be read to suggest that the burden on voters in such cases is sufficient to trigger strict scrutiny, it is inapplicable where, as here, a candidate wishes to represent a locality with fixed boundaries, such as a county. See id. at 530 n.6. (clarifying that "the one-year residency requirement does not burden the right to vote during non-reapportionment years and should therefore be upheld as applied during those years"); see also Berg v. Jaeger, 948 N.W.2d 4, 11 (N.D. 2020) (observing that "[n]o other jurisdiction has followed the holding in Robertson").

The Court finds that intrastate residency restrictions on a candidate's eligibility to run for a county-wide office are subject to intermediate scrutiny.[6] Applying this level of scrutiny, the Court holds that N.J.S.A. § 40A:9-94 is constitutional, both facially and as-applied to Oswald.

### B. Facial Challenge

Applying intermediate scrutiny, Plaintiffs cannot demonstrate a substantial likelihood of success on the merits as to their facial challenge to N.J.S.A. § 40A:9-94.

"[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "While some Members of the Court have criticized the Salerno formulation, all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep.'" Id. (quoting Washington v. Glucksberg, 521 U.S. 702, 739-740 (1997) (Stevens, J., concurring in judgments)). Facial challenges are generally disfavored for several reasons, one of which is the threat that "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." Id. (internal quotations omitted).

Defendants identify three governmental interests furthered by the durational residency requirement: (1) it ensures a sheriff candidate's familiarity with the constituency and its unique

---

[6] The Court's finding is distinguishable from Callaway, where the plaintiff-candidate sought election to a vacant seat, leading the court to observe that in "the real world of electoral politics: an open seat, or a seat with a vulnerable incumbent, is a once-in-a-blue-moon event." 193 F. Supp. 2d at 787. Plaintiffs have not alleged that the sheriff seat is vacant and even if it was, the Callaway court applied only intermediate scrutiny to the residency statute at issue. 193 F. Supp. 2d 783, 789.

Moreover, while the Voter Plaintiffs argue that the practical effect of Oswald's exclusion from the ballot would be that no Republican candidates will be listed on ballots for the June 2022 primary, Plaintiffs do not—and cannot—contend that N.J.S.A. § 40A:9-94 prevented other Republicans from seeking the nomination. The voters' lack of choice with respect to Republican candidates therefore appears more attributable to a lack of interest from prospective candidates, rather than any state action. And manifestly, an individual may not be excused from statutory requirements for candidacy simply because no one else intends to seek his party's nomination.

issues; (2) it ensures the electorate's familiarity with the candidate; and (3) it prevents political carpetbagging. See, e.g., AG Br. at 19, ECF No. 9. These interests mirror those identified by other courts when considering similar durational residency requirements. See In re Contest, 210 N.J. at 56 (collecting cases).

This Court finds that a three-year durational residency requirement is narrowly tailored to further New Jersey's significant interest in ensuring that sheriff candidates have a substantial familiarity with the relevant county and its electorate. See In re Contest, 210 N.J. at 56 (upholding a one-year durational residency requirement for members of the New Jersey General Assembly after finding that the requirement was fair and not overly burdensome for candidates and communities to become familiar with one another).[7] As the New Jersey Supreme Court observed in In re Contest, New Jersey is a vastly diverse state, and the culture and issues facing one rural county could be enormously different from those facing a neighboring seaside or urban county. Particularly in the context of an executive law enforcement position like sheriff, the State has a significant interest in ensuring that candidates spend time learning about and experiencing the public safety issues that they could potentially be responsible for handling. Id. at 56-57 (noting that a durational residency requirement is an acknowledgement that citizens "should not only have the opportunity to learn [candidate's] political views, but also to live with them in a common community").

The State's interest in having a candidate live with potential constituents is all the more compelling in light of the broad powers possessed by a sheriff. County sheriffs have enormous appointment powers, including the right to appoint (1) at least three undersheriffs, N.J.S.A. §§

---

[7] As discussed in note 4, supra, a federal court found this provision unconstitutional during reapportionment years but affirmed its legality as generally applied.

40A:9-115-16; (2) sheriff's investigators, who engage in law enforcement investigations and related duties and must complete approved police training courses, N.J.S.A. § 40A:9-117a; (3) courthouse security officers, N.J.S.A § 40A:9-117b; (4) eighty-five unpaid deputy sheriffs who have been certified by the Police Training Commission, N.J.S.A § 40A:9-117.2; (5) a chief warrant officer who is certified by the Police Training Commission, N.J.S.A § 9-117.5; (6) as many sheriff officers as the county budget permits, N.J.S.A. § 40A:9-117.6; (7) a sheriff's officer chief as the highest ranking uniformed officer within the county sheriff's department, N.J.S.A. § 40A:9-1117.15; and (8) the director of the bureau of narcotics, N.J.S.A. § 40A:9-119.2.

The sheriff also, among other things, serves process, seizes property and handles foreclosure sales, see, e.g., N.J.S.A. §§ 2A:50-19, 46:15-6.1, summons jurors, N.J.S.A. § 2B:20-7, and fingerprints students in school, N.J.S.A. § 18A:36-29. The sheriff may be directed to take and have the custody, rule, keeping, and charge of county jails and prisons. N.J.S.A. § 30:8-24.2. Lastly, the Passaic County Sheriff manages a budget of roughly $72,000,000 and oversees more than 600 employees.[8] These duties only scratch the surface of the great power a county sheriff maintains.

Given the sheriff's broad powers, three years is sufficiently tailored to permit a new resident candidate to become familiar with the people and issues of the county and for the people to become familiar with a candidate seeking a supervisory, elected law enforcement role. In imposing a longer residency requirement for sheriff than for surrogate or clerk, the Legislature recognized the extensive powers held by the sheriff and the significant interest in ensuring that candidates for sheriff have a period to become familiar with the law enforcement needs of the

---

[8] Passaic County Budget, https://www.passaiccountynj.org/home/showpublisheddocument/5034/637822548988000000 (last visited April 21, 2022).

county, build a reputation within the community, and afford residents the opportunity to become familiar with the candidates and their law enforcement policies. See Chimento v. Stark, 353 F. Supp. 1211, 1216 (D.N.H. 1973) (explaining that there was strong government rationale for imposing a longer, seven-year residency requirement on the highest elective office in the state); see also Lewis, 837 F. Supp. 2d at 416 (noting that a four-year statewide restriction "is not permanent, but limited to a relatively short temporal period," and finding it "difficult to imagine many electoral restrictions narrower in their restraint than the one at issue.").

Adding to their significance, the asserted governmental interests have their roots in the history of this State, with the three-year durational residency requirement for sheriffs dating back to 1788 through predecessor statutes. State v. Anderson, 1 N.J.L. 366 (1975); cf. Robertson I, 150 F. Supp. 2d at 698-99 (distinguishing Sununu v. Stark, 383 F. Supp. 1287, 1290 (D.N.H. 1974)—which upheld a seven-year residency restriction for governor—by noting that legislative changes affecting eligibility for elections were of "recent vintage"). Although the residency requirement was not incorporated into the state constitution, as was the case in Sununu and In re Contest, its long history reflects the same principle articulated in Chimento that "something more than the disappointment of one frustrated candidate is needed to erase a . . . provision that goes back to 1784 and was never challenged until now." 353 F. Supp. at 1217.

The Court therefore concludes that in applying the intermediate scrutiny test, the three-year durational residency requirement for county sheriff is tailored to serve significant and legitimate interests, rendering it facially constitutional.[9]  There is a heightened interest in ensuring that

---

[9] To the extent that Plaintiffs argue that the three-year residency requirement for sheriff candidates violates equal protection principles because it is inconsistent with the treatment of any other office for any New Jersey political subdivision, Pl. Br. at 13, ECF No. 2.1, rational basis review applies. The unique functions served by a sheriff are not applicable to other county positions, like the county clerk or the surrogate. For the reasons explained above regarding

sheriffs, in their law enforcement supervisory roles, have firm roots in the counties they serve and a three-year residency requirement is tailored to further that interest.

### C. As-Applied Challenge

The Court similarly finds that Plaintiffs have not demonstrated a reasonable probability of eventual success on the merits for its as-applied challenge to the durational residency requirement.

In arguing that the three-year residency requirement is unconstitutional as applied to Oswald, Plaintiffs rely on Oswald's twenty-eight years of experience in the Paterson Police Department and his early years of life in Passaic County. Pl. Mem. at 14, Pl. Rep. at 4-5. In other words, they contend that because Oswald worked in law enforcement and was raised in Passaic County, he need not actually live there for the period required by N.J.S.A. § 40A:9-94.

While the Court acknowledges that Oswald has spent significant time working and living in Passaic County, the facts presented here are not nearly as compelling as those in Callaway, 193 F. Supp. 2d at 783, which Plaintiffs rely upon. There, a candidate for city council in Atlantic City had been a lifelong resident of the municipality and had spent over twenty years working there. 193 F. Supp. 2d at 784-85. Less than a year before the city council election, the candidate moved thirteen blocks from one ward of Atlantic City to another, with the hope of running for an open seat in his new ward. Id. However, he was rendered ineligible because of a one-year durational residency requirement. Id. at 785. While the court noted that New Jersey may have an interest in ensuring that candidates will know potential constituents well, "it seems almost absurd to say that someone who lives his whole life in a city doesn't know enough about the problems of his

---

the unique functions served by a sheriff, the Court readily finds that the longer residency requirement rationally furthers the State's' legitimate interests. See Nordlinger, 505 U.S. at 10.

neighbors, simply because they live on the other side of an invisible line that runs down the middle of their street." Id. at 788-89.

Here, by contrast, Oswald is no lifelong resident of Passaic County. Although he grew up there, he has spent the last twenty-one years—nearly all of his adult life—living in other counties of the state, and certainly much more than thirteen blocks away from Passaic County.[10] Oswald allegedly moved back to Passaic County in October 2021 and registered to vote from that address only three months ago. The State has a legitimate interest in ensuring that candidates for sheriff not only live in the relevant county they seek to govern, but that they have done so for a period of reasonable time leading up to their candidacy. Consequently, Oswald's work history, connections, and historic residence in Passaic County cannot entirely circumvent the three-year residency requirement. See Lewis, 837 F. Supp. 2d at 402 ("In order to become an effective state senator, a candidate must live among and interact with his or her potential constituents." (emphasis added)). Moreover, Oswald has retired from the Paterson Police Department, meaning that his work—his main source of ties to the County—is not presently active. Compl. ¶¶ 17, 21. Therefore, Oswald's contacts with Passaic County are far less compelling than those in Callaway.

Finally, the Court also echoes the concerns articulated in In re Contest and Lewis about as-applied challenges to durational residency requirements. By tasking this Court with determining whether Oswald has sufficient knowledge of his constituency and whether the community is familiar with him, the inquiry necessarily involves the Court substituting its own judgment as to who is a proper electoral candidate. To set clear and uniform standards for candidate eligibility, the Legislature has mandated since 1788 that a potential sheriff must reside in the county for three

---

[10] Although the Complaint is silent as to Oswald's county of residency for the last twenty years, other than that he lived there for "some part" of his adult life, at oral argument, counsel clarified that he lived out of county from 2001 through 2021 – over twenty years and for much of his tenure as a police officer.

years.  State v. Anderson, 1 N.J.L. at 366.  To find that Oswald's work history could substitute for residency would go beyond the scope of this Court's power.  See Lewis, 837 F. Supp. 2d at 419 n.15 ("As between an unelected federal judge—even one sworn to uphold the Constitution—and a state constitution, it is for the latter and not the former to set the qualifications for state office.").

**V.   CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, ECF No. 2, is **DENIED.**


Date: April 21, 2022                                  /s/ *Madeline Cox Arleo*
                                                     **Hon. Madeline Cox Arleo**
                                                     **UNITED STATES DISTRICT JUDGE**